United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| KENNETH ALLARD, RHYS BROOKS, and JONATHAN OTTE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>JASPER THERAPEUTICS, INC., RONALD A. MARTELL, HERBERT C. CROSS, and EDWIN TUCKER,<br><br>Defendants. | Case No. 25-cv-08010-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT WITH LEAVE TO AMEND**<br><br>[Re: ECF 39] |

Plaintiffs Kenneth Allard, Rhys Brooks, and Jonathan Otte bring this putative class action for alleged violations of federal securities laws against Defendants Jasper Therapeutics, Inc. ("Jasper"), its former Chief Executive Officer ("CEO") Ronald A. Martell ("Martell"), its Chief Financial Officer ("CFO") Herbert C. Cross ("Cross"), and its former Chief Medical Officer ("CMO") Edwin Tucker ("Tucker"). Plaintiffs seek to represent a class of persons and entities who purchased or otherwise acquired Jasper's publicly traded stock between November 30, 2023 and January 7, 2026 ("Class Period"). The operative Amended Class Action Complaint ("Amended Complaint") asserts two claims, Count I for securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, and Count II for controlling person liability under Section 20(a) of the Exchange Act. *See generally* Am'd Compl., ECF 34.

Defendants move to dismiss the Amended Complaint for failure to state a claim under Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). At the start of the hearing on the motion, the Court highlighted several fundamental deficiencies in the Amended Complaint, including its failure to identify the alleged actionable misstatements with sufficient clarity, and failure to allege contemporaneous facts showing falsity and scienter as to each alleged misstatement. During the oral argument that followed, counsel for both sides agreed that, in the interest of efficiency, it would be appropriate for the Court to issue a fairly high-level order granting the motion with leave to amend for the reasons stated on the record. It was agreed that any second amended complaint would include a chart identifying each alleged misstatement, the speaker, and the paragraphs of the second amended complaint containing the factual allegations showing falsity and scienter.

Accordingly, for the reasons stated on the record at the hearing on October 15, 2026 and summarized below, Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND.

## I. BACKGROUND[1]

"Jasper is a clinical-stage biotechnology company and its lead product candidate is briquilimab." Am'd Compl. ¶ 3. Briquilimab targets mast cell-driven diseases such as chronic urticaria ("CU") and asthma. *See id.* ¶ 4. "Urticaria, or hives, are itchy welts or wheals on the skin caused by the release of histamine." *Id.* "CU includes both chronic spontaneous urticaria ('CSU'), which has no apparent trigger and is thus 'spontaneous,' and chronic inducible urticaria ('CindU'), which has an identifiable trigger (such as cold, heat, pressure, or exercise) and is thus 'inducible.'" *Id.* In the months before the Class Period, Jasper began focusing its resources on the development of briquilimab for CSU. *See* Am'd Compl. ¶ 5. The company secured clearance from the Food and Drug Administration ("FDA") to begin a clinical study of briquilimab that it called "BEACON." *Id.* ¶ 6. The BEACON study was limited to CSU patients who had not responded sufficiently to either antihistamines or omalizumab, the two drugs in the existing FDA-

[1] The Background section is drawn from the facts alleged in the Amended Complaint, which are accepted as true for purposes of evaluating the Rule 12(b)(6) motion to dismiss. *See Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023).

approved treatment protocol for CSU. *See id.* ¶ 7.

On November 30, 2023, the first day of the Class Period, Defendants announced that the first patient had been dosed in the BEACON study. *See* Am'd Compl. ¶ 7. Defendants thereafter stated that the results of the BEACON study would provide a basis for selection of specific doses to be studied in subsequent trials, and that a "registrational" trial was slated to begin in the second half of 2025. *See id.* ¶ 8. In January 2025, Defendants announced the enrollment of new patients into new cohorts 8 and 9 of the BEACON study. *See id.* ¶ 10. Data released on July 7, 2025 showed that 10 of the 12 patients in cohorts 8 and 9 did not respond to briquilimab. *See id.* ¶ 11. Defendants stated that these results "appear[ed] to be confounded" by an issue with one drug lot and that they were investigating the bad batch of briquilimab. *Id.*

The test results for cohorts 8 and 9 were a significant setback to obtaining FDA approval for briquilimab. *See* Am'd Compl. ¶ 12. The test results also made it more difficult to raise funding. *See id.* Jasper announced in July 2025 that it would implement cost-cutting measures, including abandoning other trials to focus on briquilimab treatment of CSU. *See id.* ¶¶ 12-13. Jasper's stock fell 55.1% on that news. *See id.* ¶ 13. On July 9, 2025, Jasper announced a corporate reorganization, including a 50% workforce reduction. *See id.* ¶ 14. Defendant Tucker, the CMO overseeing the BEACON study, left the company effective August 1, 2025. *See id.*

In December 2025, Jasper revealed that the results for cohorts 8 and 9 were not due to a bad drug batch, but instead were the result of patient selection: 9 of the 10 patients for whom briquilimab was ineffective did not have CSU. *See* Am'd Compl. ¶ 15. Plaintiffs claim that unqualified investigators and inadequate screening led to enrollment of the 9 misdiagnosed patients. *See id.* ¶¶ 18-28. On January 7, 2026, the last day of the Class Period, Jasper announced the termination of its CEO, Defendant Martell. *See id.* ¶ 30. The company's stock fell to $1.66 per share, down 90% from its $17.71 closing price on January 7, 2025. *See id.* ¶ 31.

Plaintiffs filed the complaint in this action on September 19, 2025, and filed the operative Amended Complaint on February 17, 2026, asserting claims under Sections 10(b) and 20(a) of the Exchange Act. In essence, Plaintiffs claim that Jasper and its officers misled the market regarding the timeline, risks, and progress of its development of briquilimab for treatment of CSU.

Defendants seek dismissal of the Amended Complaint under Rule 12(b)(6).

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When evaluating a Rule 12(b)(6) motion, the district court is limited to consideration of the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice. *See Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016).

### B. Rule 9(b) and the PLSRA

In addition to the pleading standard discussed above, "[a] securities fraud complaint under § 10(b) and Rule 10b-5 must satisfy the dual pleading requisites of Federal Rule of Civil Procedure 9(b) and the PSLRA." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "The PSLRA mandates that 'the complaint shall specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading[.]'" *In re VeriFone Holdings*, 704 F.3d at 701 (quoting 15 U.S.C. § 78u-4(b)(1)(B)). "The PSLRA further provides that the complaint 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id*. (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

## III. DISCUSSION

The Amended Complaint contains Count I for securities fraud under Section 10(b) and Rule 10b-5, asserted against all Defendants, and Count II for controlling person liability under Section 20(a), asserted against individual Defendants Martell, Cross, and Tucker. Defendants

move to dismiss both claims.

Before addressing Defendants' substantive arguments regarding Plaintiffs' claims, the Court takes up Defendants' request that the Court consider nine documents not attached to the Amended Complaint, either by taking judicial notice of them or by considering them under the incorporation by reference doctrine. *See* Am'd RJN, ECF 40. Plaintiffs have not objected.

Defendants ask the Court to consider its Exhibits 1-5, 7, and 9 under the incorporation by reference doctrine. Those documents comprise press releases, transcripts of public statements, and excerpts from the BEACON study record that are referenced extensively throughout the Amended Complaint and form the basis of Plaintiffs' claims. The Court finds that the documents properly may be considered under the incorporation by reference doctrine. *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) (applying incorporation by reference doctrine to SEC filings, press releases, and conference call transcripts cited in the complaint).

Defendants ask the Court to take judicial notice of its Exhibits 6 and 8, which are excerpts from Jasper's Form 10-K filed with the SEC on March 8, 2023 and Martell's Form 4 filed with the SEC on September 22, 2025. The Court finds that Defendant's request is proper, as "SEC filings are routinely subject to judicial notice." *In re Intel Corp. Sec. Litig.*, No. 18-CV-00507-YGR, 2019 WL 1427660, at *7 (N.D. Cal. Mar. 29, 2019).

Defendants' request for consideration of their Exhibits 1-9 is GRANTED.

**A. Count I – Section 10(b) and Rule 10b-5**

"Section 10(b) of the Securities Exchange Act of 1934 bars the use of 'manipulative or deceptive device[s]' in 'connection with the purchase or sale' of registered securities." *Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1130 (9th Cir. 2025) (quoting 15 U.S.C. § 78j(b)). "Rule 10b-5 clarifies and builds upon this statutory anti-fraud provision." *Id.* (citing 17 C.F.R. § 240.10b-5).

A securities fraud plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Sneed*, 147 F.4th at 1130 (internal quotation marks and citation omitted). The material misrepresentation or omission required under the first element commonly

is shorthanded as "falsity." *See Espy v. J2 Glob., Inc.*, 99 F.4th 527, 535 (9th Cir. 2024).

"Even when a plaintiff has adequately pleaded all six elements of a Section 10(b) claim, the defendant may be protected under the PSLRA's 'safe harbor' provision for forward-looking statements." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 767 (9th Cir. 2023). Forward-looking statements include those relating to the company's plans and objectives for future operations. *See id*. "Pursuant to the safe harbor, an issuer will not be liable with respect to any forward-looking statement if: (A) the statement is 'identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement'; or (B) the plaintiff fails to prove that the statement 'was made with actual knowledge . . . that the statement was false or misleading.'" *Id*. (quoting 15 U.S.C. § 78u-5(c)(1)). "In other words, a defendant will not be liable for a false or misleading statement if it is forward-looking and *either* is accompanied by cautionary language *or* is made without actual knowledge that it is false or misleading." *Id*. (internal quotation marks and citation omitted).

Defendants contend that Plaintiffs have not adequately alleged falsity or scienter, and that a number of the alleged misstatements fall within the PSLRA's safe harbor provision.

**1. Falsity**

In alleging falsity, "securities plaintiffs may rely on either an affirmative misrepresentation theory or an omission theory." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1188 (9th Cir. 2021). The plaintiff must allege that the challenged statement either "directly contradicts what the defendant knew at that time or omits material information." *Glazer*, 63 F.4th at 764 (internal quotation marks, brackets, and citation omitted). Section 10(b) and Rule 10b-5 "do not create an affirmative duty to disclose any and all material information." *Id*. Disclosure is required only when necessary to make statements "not misleading" in light of the circumstances in which they were made. *Id*.

"The falsity analysis is slightly different when the challenged statements contain opinions." *Glazer*, 63 F.4th at 764. When the statement at issue is opinion, it is not actionable as false or misleading merely because it ultimately turns out to be incorrect or because the speaker "knows, but fails to disclose, some fact cutting the other way." *Id*. "However, a reasonable

investor expects that the issuer's opinion fairly aligns with the information in the issuer's possession at the time." *Id.* (internal quotation marks and citation omitted). "To state a claim that an opinion is false or misleading, the investor must identify particular material facts regarding the basis for the issuer's opinion, the omission of which make the statement misleading to a reasonable person reading the statement fairly and in context." *Id.* (internal quotation marks and citation omitted).

While some statements of opinion may be actionable as described above, corporate "puffery" is not. *Macomb Cnty. Employees' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1097 (9th Cir. 2022). "Corporate puffing involves expressing an opinion that is not capable of objective verification." *Id.* (internal quotation marks and citation omitted). "These vague statements of optimism like good, well-regarded, or other feel good monikers, are not actionable because professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives." *Id.* (internal quotation marks and citation omitted).

As discussed at the hearing, the Court cannot discern from the Amended Complaint which alleged misstatements form the bases of Plaintiffs' claims. The section of the Amended Complaint titled "Defendants' Class Period Misrepresentations" comprises 41 paragraphs that contain multiple block quotations from Defendants' public disclosures. *See* Am'd Compl. ¶¶ 169-209. It is unclear which statements in those quotations are alleged to be false or misleading. Some portions of the quotations are italicized and bolded, but the significance of the emphasis is unclear. If Plaintiffs intend their clams to be limited to the statements in italics and bold, that is not apparent from their pleading. As several courts in this district have held when rejecting similar allegations as insufficient, "Defendants are not required to guess at the basis of Plaintiffs' claims." *Primo v. Pac. Biosciences of California, Inc.*, 940 F. Supp. 2d 1105, 1112 (N.D. Cal. 2013) (collecting cases). Plaintiffs' Section 10(b) claim is subject to dismissal on that basis.

Defendants deal with this uncertainty by grouping the statements identified in the Amended Complaint into three general categories: (a) projections in 2023 and 2024 that Jasper expected to begin a registrational clinical trial in the second half of 2025; (b) statements in early 2025 regarding the BEACON study's progress; and (c) a July 7, 2025 announcement that results

from cohorts 8 and 9 "appear to be confounded by an issue with one drug product lot[.]" Am'd Compl. ¶ 11.

Given that Plaintiffs will be amending their pleading, the Court does not address each and every alleged misstatement and corresponding argument advanced by Defendants at this time. Defendants may reassert all of their arguments in a future motion to dismiss, if appropriate, once Plaintiffs clearly identify the alleged misstatements upon which their Section 10(b) claim is based. The Court expects that resolution of any such future motion will entail a statement-by-statement analysis of the alleged false or misleading statements set forth in the second amended complaint.

With respect to Jasper's statements in 2023 and 2024 that it expected to begin a registrational clinical trial in the second half of 2025, Defendants' primary argument is that those forward-looking statements are not actionable under the PSLRA's safe harbor. Applicability of the safe harbor is addressed separately, below. However, Defendants also argue that Plaintiffs have not alleged facts sufficient to show falsity with respect to Jasper's projections that it would commence a registrational trial in 2025. Plaintiffs allege that those statements were rendered misleading by Defendants' omission of the material facts that the original BEACON protocol would not qualify for a registrational trial and would have to be amended to add additional cohorts to support a registrational trial. *See* Am'd Compl. ¶¶ 176-185. Plaintiffs have not identified internal data or documents from 2023 and 2024 showing that additional cohorts would be necessary, or that the necessity for additional cohorts would derail Jasper's projected timeline for a registrational clinical trial. To the extent Plaintiffs rely on generally positive statements regarding the company's "excellent progress advancing briquilimab," at least some of those statements appear to be nonactionable opinion or puffery. *See id.* ¶ 184.

With respect to Jasper's early 2025 statements regarding the BEACON study's progress after the addition of cohorts 8 and 9, Plaintiffs have not alleged facts sufficient to show those statements were false or misleading when made. Plaintiffs allege that Defendants failed to disclose the material fact that cohorts 8 and 9 had an "especially high risk" of including patients who were misdiagnosed as having CSU. *See* Am'd Compl. ¶¶ 187-207. However, Plaintiffs have not alleged sufficient contemporaneous company data or documents to show that patients in

cohorts 8 and 9 were at especially high risk for misdiagnosis when those patients were enrolled in the BEACON study. Plaintiffs allege in conclusory fashion that "Defendants had selected unqualified investigators to participate in cohorts 8 and 9," and that the company "was selecting unqualified study sites[.]" *Id.* ¶ 192. However, Plaintiffs have not alleged sufficient facts to support those conclusions, for example, a list of qualifications required by the FDA for investigators and facts showing that Jasper's investigators lacked those qualifications.

Finally, with respect to the July 7, 2025 announcement that results from cohorts 8 and 9 appeared to be "confounded" by a bad batch of briquilimab, Defendants argue in their moving papers that the statement is not actionable because it was made after the last stock purchase by a named Plaintiff. "As a matter of law, conduct actionable under Rule 10b-5 must occur before investors purchase the securities." *Binder v. Gillespie*, 184 F.3d 1059, 1066 (9th Cir. 1999). Defendants' counsel withdrew that argument at the hearing based on Plaintiff Rhys Brooks' certification that he purchased Jasper stock on November 11, 2025, after the July 7, 2025 announcement.

At the hearing, Plaintiffs' counsel expressed confidence that any deficiencies in pleading actionable misstatements can be cured by amendment. As noted above, a second amended complaint must include a chart setting forth an enumerated list of alleged misstatements and identifying the paragraphs of the second amended complaint containing the factual allegations establishing falsity. If Defendants move to dismiss the second amended complaint, the Court will be able to conduct a thorough analysis of Plaintiffs' allegations of falsity on a statement-by-statement basis.

**2. Scienter**

To make out a claim under Section 10(b) and Rule 10b-5, the plaintiff must "plead facts giving rise to a strong inference that the defendants acted with scienter." *Sneed*, 147 F.4th at 1134. To meet this standard, Plaintiffs must "allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). "A strong inference arises only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference

one could draw from the facts alleged." *Sneed*, 147 F.4th at 1134 (internal quotation marks and citation omitted).

Plaintiffs' allegations regarding scienter are deficient. The allegations regarding information obtained from anonymous former employees are not specific enough and/or are not tied closely enough to the alleged misstatements to give rise to a strong inference of scienter. Plaintiffs' allegations regarding Defendants' motives to defraud the market (the need for funding and necessities of competition), the departure of corporate officers, and the company's core operations are too generic to meet the pleading standard for scienter.

**3. Safe Harbor**

As discussed above, "a defendant will not be liable for a false or misleading statement if it is forward-looking and *either* is accompanied by cautionary language *or* is made without actual knowledge that it is false or misleading." *Glazer*, 63 F.4th at 767 *Id*. (internal quotation marks and citation omitted). Defendants point to several cautionary statements made in conjunction with Jasper's forward-looking statements regarding the expected timeline for a registrational trial. *See, e.g.*, Defs.' Ex. 4 (1/9/2404 corporate presentation warning that ("the forward-looking events and circumstances discussed in this Presentation are inherently uncertain and may not occur"); Ex. 6 (Mar. 8, 2023 10-K, cautioning that the company did "not know whether any clinical trials will begin as planned"). Moreover, Plaintiffs have not alleged facts showing that at the time of Defendants' 2023 and 2024 statements regarding commencement of a registrational clinical trial in 2025, Defendant had actual knowledge of facts making that timeline unlikely or impossible. Accordingly, it appears that at least some of Defendants' statements regarding the projected timeline for a registrational trial fall within the PSLRA's safe harbor.

Based on the foregoing, Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Count I for violation of Section 10(b) and Rule 10b-5.

**B. Count II – Section 20(a)**

Section 20(a) of the Exchange Act makes "controlling" individuals liable for a company's violations of section 10(b) and its regulations. *See Zucco*, 552 F.3d at 990. "[A] defendant employee of a corporation who has violated the securities laws will be jointly and severally liable

to the plaintiff, as long as the plaintiff demonstrates a primary violation of federal securities law and that the defendant exercised actual power or control over the primary violator." *Id.* (internal quotation marks and citation omitted). "Section 20(a) claims may be dismissed summarily, however, if a plaintiff fails to adequately plead a primary violation of section 10(b)." *Id.*

Defendants seek dismissal of this claim on the ground that Plaintiffs have not alleged a primary violation of Section 10(b). As discussed above, the Court has determined that the Section 10(b) claim is deficient. Accordingly, the motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Count II.

## IV. ORDER

(1) Defendants' motion to dismiss the Amended Complaint is GRANTED WITH LEAVE TO AMEND.

(2) Any second amended complaint SHALL include a chart in substantially the same format as the example below, setting forth an enumerated list of alleged misstatements and identifying the paragraphs of the second amended complaint containing: each alleged misstatement, the identity of the speaker, the facts showing falsity, and the facts showing scienter.

| Number | Alleged Misstatement | Speaker | Facts re Falsity | Facts re Scienter |
|---|---|---|---|---|
| 1 | "The Q3 decline in revenue was due to the loss of a single contract." ¶ 42 | CEO Phillip Scott ¶ 42 | ¶¶ 57-59 | ¶¶ 82-85 |
| 2 | | | | |

(3) Any second amended complaint SHALL be filed by January 19, 2027.

(4) Leave to amend is limited to the existing parties and claims. Plaintiffs may not add new parties or claims without obtaining express leave of the Court.

(5) This order terminates ECF 39.

Dated: November 17, 2026

BETH LABSON FREEMAN
United States District Judge



United States District Court
Northern District of California